IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| John Knauss,<br><br>   Plaintiff,<br><br> v.<br><br>Commissioner of Social Security,<br><br>   Defendant. | Civil No. 17-437(RMB)<br><br>**OPINION** |

**BUMB**, United States District Judge:

THIS matter comes before the Court upon an appeal by Plaintiff John Knauss (the "Plaintiff") of the final determination of the Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for disability insurance benefits ("DIB") for the period beginning April 17, 2014. For the reasons set forth below, the Court vacates the decision of the Administrative Law Judge ("ALJ") and remands for proceedings consistent with this Opinion.

**I. Disability Defined**

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has

lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Act further states that:

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has promulgated a five-step, sequential analysis for evaluating a claimant's disability, as outlined in 20 C.F.R. § 404.1520(a)(4)(i)-(v). In Plummer v. Apfel, 186 F.3d 422, 428 (3d Cir. 1999), the Third Circuit described the Commissioner's inquiry at each step of this analysis, as follows:

> In step one, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a). If a claimant is found to be engaged in substantial activity, the disability claim will be denied. Bowen v. Yuckert, 482 U.S. 137, 140 (1987).
>
> In step two, the Commissioner must determine whether the claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520(c). If the claimant fails to show that his impairments are "severe," he is ineligible for disability benefits.
>
> In step three, the Commissioner compares the medical evidence of the claimant's impairment to a list of

impairments presumed severe enough to preclude any gainful work. 20 C.F.R. § 404.1520(d). If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five.

Step four requires the ALJ to consider whether the claimant retains the residual functional capacity to perform his past relevant work. 20 C.F.R. § 404.1520(d). The claimant bears the burden of demonstrating an inability to return to his past relevant work. Adorno v. Shalala, 40 F.3d 43, 46 (3d Cir. 1994). If the claimant is unable to resume his former occupation, the evaluation moves to the final step.

At this [fifth] stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. 20 C.F.R. § 404.1520(f). The ALJ must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with his medical impairments, age, education, past work experience, and residual functional capacity. The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether he is capable of performing work and is not disabled. See 20 C.F.R. § 404.1523. The ALJ will often seek the assistance of a vocational expert at this fifth step. See Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984).

**II. Background**

This Court recites only the facts that are necessary to its determination on appeal, which is limited to the Administrative Law Judge's ("ALJ") consideration of Plaintiff's lumbar radiculopathy and the weight afforded to the opinions of Dr. Pirone and Dr. McLarnon, state-agency physicians, and Dr. Spergel, a consulting psychologist/vocational expert, in the

ALJ's calculation of Plaintiff's Residual Functional Capacity ("RFC").

A. Brief Medical History

Plaintiff was born on January 31, 1961 and was 53 years old on the alleged date of disability onset, April 17, 2014. (Administrative Record "R." 45, 179). Plaintiff was involved in a motor vehicle accident in 2011, which he testified ultimately led to his inability to work beginning in 2014. (R. 41, 64). Plaintiff testified -- and the medical evidence reflects to various extents -- that he suffers from impairments to his spine as a result of his accident.

Specifically, Plaintiff has suffered from herniation and stenosis at both the cervical and lumbar levels, (Id. at 334-35, 409-14, 474-77), and cervical and lumbar radiculopathy, (Id. at 444-64, 465-69, 520-23, 563), among other impairments. Plaintiff attempted to combat these issues with injection treatments, but ultimately chose (in accordance with the recommendation of his treating physician) to undergo an anterior cervical discectomy and fusion at C5-6 and C6-7 in January 2015. (Id. at 535-48, 549-50, 552-68). A lumbar fusion was also considered based on the results of a discogram and CT scan, but Plaintiff did not undergo that procedure. (Id. at 539, 541, 553, 556).

1. State Agency Physician Opinions

On July 22, 2014, state-agency consultant Dr. Arthur Pirone provided a report opining on Plaintiff's disability status in connection with the Commissioner's initial determination. (Id. at 97-103). Dr. Pirone did not perform a consultative examination, and his opinion was based on his review of records provided by Plaintiff, Plaintiff's treating physician Dr. Joan O'Shea, Dr. Allen Carr, D.O., and Dr. Robert Petruzzelli. Based on his review of the record (as it stood in July 2014), Dr. Pirone determined that Plaintiff suffered from severe back disorders (discogenic and degenerative). (Id. at 99). Dr. Pirone further determined that Plaintiff's medically determinable impairments could reasonably be expected to produce pain or other symptoms, but not to the extent that Plaintiff alleged. (Id. at 100). Dr. Pirone's assignment of less than full credibility to Plaintiff's statements regarding his level of impairment was based on his conclusion that "[t]he preponderance of the medical evidence indicates that the claimant has no difficulty standing, walking, sitting, or with use of his upper extremities." (Id.).

Dr. Pirone concluded that Plaintiff could occasionally lift up to 20 pounds, frequently lift up to 10 pounds, could stand and/or walk for "about" 6 hours in an 8-hour workday, and could sit for "about" 6 hours in an 8-hour workday. (Id.) Considering these limitations, Dr. Pirone found that Plaintiff could perform

5

his past relevant work as a sales representative and accordingly was not disabled.

On September 8, 2014 state-agency consultant Dr. Mary McLarnon provided a report opining on Plaintiff's disability status in connection with the Commissioner's reconsideration of Plaintiff's application. (Id. at 105-12). Like Dr. Pirone, Dr. McLarnon's opinion was based on a review of a portion of Plaintiff's medical records, and Dr. McLarnon did not examine Plaintiff. Dr. McLarnon considered the same evidence considered by Dr. Pirone, with the addition of Plaintiff's September 4, 2014 adult function report. Dr. McLarnon reached the same diagnosis as Dr. Pirone, affirming his conclusions about Plaintiff's credibility and, ultimately, Plaintiff's RFC.

2. Dr. Spergel Opinion

Plaintiff underwent a vocational evaluation with Dr. Philip Spergel, Ed. D., on May 22, 2015 in connection with a civil suit relating to Plaintiff's accident. (Id. at 415-43). Dr. Spergel is a licensed psychologist and a vocational expert, not a physician, and his evaluation was focused on both Plaintiff's mental and physical capacity to work. Based on a thorough review of Plaintiff's relevant medical history, personal and vocational history, and an in person evaluation, Dr. Spergel concluded that as of May 22, 2015 Plaintiff was "unemployable— that is unable to compete in the competitive labor market

6

because of his inability to conform to the demands of a competitive job environment, specifically . . . [t]o arrive to work daily and in a timely fashion to be productive—that is quality and quantity of work; and to interact effectively with co-workers and supervisors." (Id. at 442). Based on his observations of Plaintiff, Dr. Spergel also noted that Plaintiff had "great difficulty" sitting for sustained periods, had marked difficulty with weight bearing activities, and was self-conscious, depressed and anxious, and reluctant to assert himself. (Id.).[1]

B. Procedural Background

Plaintiff applied for DIB on May 16, 2014 alleging that he was disabled as of April 17, 2014 as a result of spinal disorders. (Id. at 179-80). Plaintiff's claims were denied at the initial level and upon reconsideration. (Id. at 116-20, 122-27).

On September 24, 2014, Plaintiff requested a hearing, (Id. at 129-30), and on June 7, 2016, a hearing was held before the Honorable Karen Shelton (the "ALJ"). (Id. at 33-95). Plaintiff and vocational expert Gary A. Young (the "Vocational Expert")

---

[1] Whether Dr. Spergel, a psychologist, could properly opine on Plaintiff's physical limitations is disputed by the parties in their briefs. This was not, however, the basis upon which the ALJ afforded Dr. Spergel's opinion little weight, as discussed below. Moreover, the Court need not resolve this issue because it is not necessary to its decision, as set forth below.

testified at the hearing. (Id.). On July 20, 2016, the ALJ issued a decision finding that Plaintiff was not disabled. (Id. at 11-41). The Appeals Council denied Plaintiff's request for review on January 6, 2017, (Id. at 1-6), at which time the ALJ's decision became the final determination of the Commissioner.

C. The ALJ's Decision

The ALJ applied the requisite five-step analysis in her Opinion, ultimately concluding that Plaintiff was not "disabled." At Step 1, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since April 17, 2014. (Id. at 21). At Step 2, The ALJ found that Plaintiff had one severe impairment: degenerative disc disease of the cervical and lumbar spine (status-post cervical fusion). (Id.). Next, at the Third Step, the ALJ determined that the Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1. (Id. at 21-22)

Based on her findings, the ALJ determined that Plaintiff had the RFC to perform

> light work as defined in 20 CFR 404 .1567(b) except she [sic] can lift/carry 20 pounds occasionally and 10 pounds frequently; stand/walk 6 hours in an 8-hour workday; sit 6 hours in an 8-hour workday; requires the ability to stand for 5 minutes after 30 minutes of sitting and sit for 5 minutes after 30 minutes of standing; occasionally climb ramps/stairs (but never climb ladders/ropes/scaffolds) and frequently handle/finger.

(Id. at 22-28). In making these findings, the ALJ considered, among other things, the Plaintiff's testimony, Adult Function Reports completed by Plaintiff, Plaintiff's medical records including the treatment notes and reports of multiple doctors who evaluated Plaintiff, and the opinions of Doctors Pirone, McLarnon, Spergel, and Mobley.

The ALJ found that the assertions made by Plaintiff regarding the "intensity, persistence and limiting effects of" his symptoms were not "entirely consistent with the medical evidence and other evidence in the record," finding, among other things, that Plaintiff's "self-reported activities of daily living are inconsistent with an individual experiencing totally debilitating symptomology." (Id. at 24). The ALJ afforded great weight to the opinions of Doctors Pirone and McLarnon (that Plaintiff was capable of functioning at a higher level than he claimed), finding "that they are consistent with the [Plaintiff's] relatively intact strength, range of motion, and good response to treatment as documented in the record."

The ALJ, in turn, afforded "little weight" to the opinions of Doctors Spergel and Mobley. First, the ALJ afforded little weight to Dr. Spergel's opinion, formed after his May 2015 consultation with Plaintiff, that Plaintiff was "unemployable," finding that it "fail[ed] to account for the possibility of jobs

that are consistent with an individual having the opportunity to switch positions as set forth in the [RFC]." (Id. at 27). Moreover, the ALJ found that Dr. Spergel's conclusions that Plaintiff could not (1) maintain a regular schedule; (2) reliably attend work; and (3) interact appropriately with others were "presumptuous" and "inconsistent with [Plaintiff's] appearance at consultative and physical examinations and his residual abilities." (Id.). Second, the ALJ afforded "little weight" to Dr. Mobley's opinion, finding that it was "conclusory and fail[ed] to set forth a function-by-function analysis regarding . . . [Plaintiff's] abilities and limitations" and that it was inconsistent with the medical evidence.[2] (Id.).

After performing the RFC assessment, the ALJ determined, consistent with the opinion of the Vocational Expert, that Plaintiff was able to perform his past relevant work as a sales representative (automotive). (Id. at 28). Accordingly, the ALJ concluded that Plaintiff had "not been under a disability" since April 17, 2014, and Plaintiff's application was denied. (Id. at 28-29).

**III. Standard of Review**

When reviewing an ALJ's final decision on disability benefits, courts are required to uphold the ALJ's factual

---

[2] Plaintiff challenges the ALJ's assignment of "little weight" to both of these opinions.

10

determinations if they are supported by "substantial evidence." Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir. 2000); 42 U.S.C. §§ 405(g), 1383(c)(3). "'Substantial evidence' has been defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Dellapolla v. Comm'r, 662 Fed. Appx. 158, 160 (3d Cir. 2016) (quoting Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971))).

If faced with conflicting evidence, however, the Commissioner "must adequately explain in the record his reason for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)); see also Guerrero v. Comm'r, No. 05-1709, 2006 WL 1722356, at *3 (D.N.J. June 19, 2006) ("The ALJ's responsibility is to analyze all the evidence and to provide adequate explanations when disregarding portions of it."), aff'd, 249 F. Appx. 289 (3d Cir. 2007). As stated by the Third Circuit,

> [U]nless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978) (quoting Arnold v. Sec'y of Health, Ed. & Welfare, 567 F.2d 258, 259 (4th Cir. 1977)) (internal quotations omitted).

While the Commissioner's decision need not discuss "every tidbit of evidence included in the record," Hur v. Barnhart, 94 F. App'x 130, 133 (3d Cir. 2004), it must consider all pertinent medical and non-medical evidence and "explain [any] conciliations and rejections," Burnett v. Comm'r, 220 F.3d 112, 122 (3d Cir. 2000). See also Fargnoli v. Massanari, 247 F.3d 34, 42 (3d Cir. 2001) ("Although we do not expect the [administrative law judge] to make reference to every relevant treatment note in a case where the claimant ... has voluminous medical records, we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law.").

In addition to the "substantial evidence" inquiry, the Court must also determine whether the ALJ applied the correct legal standards. See Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000). The Court's review of legal issues is plenary. Id. at 262 (citing Schaudeck v. Comm'r, 181 F.3d 429, 431 (3d Cir. 1999).

**IV. Analysis**

Plaintiff presents three issues for review by this Court. First, Plaintiff argues that the ALJ failed to provide a proper

RFC assessment taking into account all of Plaintiff's severe medically determinable impairments pursuant to SSRs 96-8p and 96-3p. Specifically, Plaintiff contends that the ALJ failed to properly consider Plaintiff's lumbar radiculopathy at step two and in rendering the RFC. (Pl.'s Br. 6-10). Second, Plaintiff argues that the ALJ failed to properly evaluate and weigh the evidence of record. Specifically, Plaintiff argues that (1) the opinions of Agency reviewers Dr. Pirone and Dr. McLarnon, to which the ALJ afforded great weight, were based on incomplete understandings of the nature and extent of the Plaintiff's symptoms and limitations, and (2) the ALJ improperly disregarded the opinion of Dr. Spergel. Finally, Plaintiff argues that he should be entitled to summary judgment on the above arguments. (Id. at 16-17).

Because the Court finds that the ALJ failed to properly address all of the medical evidence of record, specifically Plaintiff's lumbar radiculopathy, the Court cannot determine whether the Commissioner's finding is supported by substantial evidence. As such, the Court will remand for further proceedings. See Fargnoli v. Massanari, 247 F.3d 34, 42 (3d Cir. 2001) ("Where there is conflicting probative evidence in the record, we recognize a particularly acute need for an explanation of the reasoning behind the ALJ's conclusions, and will vacate or remand a case where such an explanation is not

provided."). Because remand is warranted on these issues, the Court need not reach Plaintiff's additional arguments.

A. <u>Failure to Consider Plaintiff's Lumbar Radiculopathy</u>

Plaintiff argues that the ALJ erred in failing to properly address Plaintiff's lumbar radiculopathy. Plaintiff contends that this constituted error both at Step two of the sequential evaluation process and in formulating Plaintiff's RFC.

In order to determine, at Step 2, that an impairment is not "severe," the ALJ must provide "a careful evaluation of the medical findings that describes the impairment(s) (i.e., the objective medical evidence and any impairment-related symptoms), and an informed judgment about the limitations and restrictions the impairment(s) and related symptom(s) impose on the individual's physical and mental ability to do basic work activities." SSR 96-3p. "Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." <u>Cotter v. Harris</u>, 642 F.2d 700, 706-07 (3d Cir. 1981)(internal citation omitted).

As noted above, the medical evidence contains references to Plaintiff's lumbar radiculopathy, among other impairments. (R. 445, 448, 451, 454, 457, 460, 463, 467, 522, 571, 575). While

the ALJ did review Plaintiff's symptoms when determining the RFC, (see, e.g., Id. at 22-26), she made no mention of radiculopathy, or any diagnosed medical impairment, other than degenerative disc disease. Moreover, The ALJ did not provide any reasoning at Step 2, simply concluding that Plaintiff had "degenerative disc disease of the cervical and lumbar spine (status-post cervical fusion)."[3] (R. 21).

The ALJ is required to assess all of Plaintiff's impairments (both "severe" and not) when formulating the RFC. See 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' as explained in §§ 404.1520(c), 404.1521, and 404.1523, when we assess your residual functional capacity."); see also SSR 96-8 (requiring adjudicator to consider "limitations and restrictions imposed by all of an individual's impairments, even those that are not severe"). It is not clear to the Court whether the ALJ did so here. Accordingly, the Court cannot determine whether the ALJ's decisions at Step 2 and on Plaintiff's RFC are supported by substantial evidence.

---

[3] It is entirely possible that the symptoms addressed by the ALJ associated with Plaintiff's degenerative disc disease are the same as those connected to lumbar radiculopathy. It is not clear from the ALJ's opinion, however, that this is the case.

15

Therefore, they must be vacated and this matter must be remanded for further proceedings.

On remand, the ALJ must evaluate all of the evidence involving Plaintiff's physical impairments, including lumbar radiculopathy, and explain why, alone or in combination, these impairments do or do not satisfy the step two severity standards. Furthermore, even if Plaintiff's impairments (other than degenerative disc disease) are not "severe," they should be explicitly considered in the RFC formulation.

## V. Conclusion

Because it is not clear that the ALJ considered all of Plaintiff's medically determinable impairments at Step 2 or in determining Plainiff's RFC, the decision of the Commissioner will be vacated and the Court will remand for further proceedings. On remand, the ALJ may still determine that Plaintiff is not disabled. In other words, she may determine that Plaintiff's lumbar radiculopathy (and other diagnosed impairments) are not severe and that they have no effect on Plaintiff's RFC. Those decisions, however, must be expressed in the ALJ's Opinion.

An Order consistent with this Opinion shall issue on this date.

_s/_Renee Marie Bumb  
RENÉE MARIE BUMB  
United States District Judge

DATED: March 29, 2018